## CIRCUIT COURT OF THE CITY OF RICHMOND

Kenneth W. Ruffin, Jr.

v.

Tignor Trucking Corp.,
Frederick L. Duty,
and Cindy Ann Godsey

July 20, 1982

Case No. LE-1782

By JUDGE MARVIN F. COLE

I wish to advise that I have now read the memorandum of authorities which you have forwarded to me pertaining to the motions to set aside the jury verdict in this case. I have considered all of the issues raised and I am of the opinion that the verdict of the jury should not be set aside for the reasons set forth in the memorandum filed herein by counsel for the plaintiff.

I am not going into any detailed statement of the facts in this case, because I do not have before me a transcript of the evidence. However, there is one unique feature in the case which I think it advisable to discuss and therefore in order to do this, it will be necessary that I state some of the facts of the case.

Frederick L. Duty was driving a tractor on Interstate 64 on the night of September 4, 1981. Duty had just left Interstate 95 and had barely gotten out of the turn and onto Interstate 64 when his vehicle left the road and struck a guardrail. The vehicle then turned over and continued down the highway some 227 feet and again struck the guardrail at two places. The plaintiff and some friends were also driving a car in the same direction on Interstate 64 and observed what had occurred to the Duty tractor. They immediately pulled off of the roadway and came back to the tractor to lend assistance. The plaintiff testified

that he tried unsuccessfully to open the doors of the tractor and then climbed upon the fuel tank on the driver s side of the vehicle and talked to Duty, the driver of the tractor. The tractor's motor was running, but the key had fallen out of the ignition and he had lost his glasses and he was in the floor of the tractor trying to locate the key in order to cut off the running of the motor. The plaintiff testified that the doors to the tractor could not be opened and that he could not get into the tractor. Very little time had elapsed, perhaps five minutes, when another vehicle was seen approaching from the rear. The plaintiff was unable to jump off the tractor for other traffic. The approaching vehicle which was operated by the defendant, Godsey, struck the tractor in the rear, which knocked the plaintiff off the tractor, causing severe injuries.

The defendant, Duty, and his employer, Tignor Trucking Corporation, contend in this case that they owed no duty to the plaintiff and that a rescuer cannot recover from the person that he is trying to rescue, because there is no breach of any duty and consequently no negligence. In support of this position they have cited the case of *Saylor* v. *Parsons*, 122 Iowa 679, 98 N.W. 500 (1904). They urged that this court adopt the reasoning of the *Saylor* case. They state that there can be no breach of duty giving rise to negligence because the defendant, Duty, owed no duty to Ruffin, the plaintiff. Because Duty owed no legal duty to preserve his own life, he owed no legal duty to the plaintiff and consequently he would not be negligent to the plaintiff.

The only problem with the defendant's contention is that they have not been able to produce another case holding the same position since 1904. Admittedly, there is no law on the subject because there are not many accidents that occur in this fashion. However, there is an article in A.L.R. which discusses this very issue. An Article appearing in 6 A.L.R. 3d 558 entitled *Rescue Doctrine: Negligence and Contributory Negligence in Suit by Rescuer Against Rescued Person* summarized all the cases that they have found on this point and their summary is as follows:

> While there is not a great deal of authority on the question, there seems to be but little doubt that a rescuer who is injured in reasonably

undertaking to save a person who has negligently imperiled himself may recover from that person. Since recovery would ordinarily be allowed the rescuer as against some third person whose negligence imperiled the victim, it appears to be but a logical application of the well-established principles of the rescue doctrine to allow recovery against the victim himself if it was his negligence which prompted the rescuer's actions. This view finds express support in the works of some textwriters, and would seem to be the approach taken in the Restatement. In fact, the only authority to the contrary seems to be the early case of *Saylor v. Parsons* (1904) 122 Iowa 679, 98 N.W. 500, 64 L.R.A. 542, in which the court, although stating flatly that the rescuer must rely on "magnanimity" where the suit is against the victim, made express mention of the fact that there had been no showing of negligence on the victim's part in imperiling himself (if indeed he was "imperiled" under the facts recited in the opinion), and seemed to base its decision denying recovery, at least in part, on plaintiff's consequent failure to make out a case under ordinary tort principles. In any event, nearly all the opinions in the cases allowing recovery indicate that the courts were aware of the Saylor Case and either deliberately declined to follow it or distinguished it on its facts, and it does not seem likely that future courts will see fit to revive its teachings.

I am not going to go into the cases cited in that annotation, but the author of the annotation does state that the case of *Saylor* v. *Parsons, supra,* is the only case that they have been able to find which holds to the defendant's position in this matter.

In the case of *Southern Rail Company* v. *Baptist,* 114 Va. 723 (1913), the Supreme Court of Virginia quoted with approval a Minnesota case, where one was injured while attempting to rescue a fellow employee from impending danger, and the quoted statement was to the effect that sentiments of humanity applaud the act, the law commends

it, and, if not extremely rash and reckless, awards the rescuer redress for injuries received, without weighing with technical precision the rules of contributory negligence or assumption of risk.

Rescue is so commendable that we now have laws to protect the Good Samaritan, who on the spur of the moment might not give assistance that is up to the standard of care that would usually be required.

Another reason to permit the rescuer to recover from the one being rescued is that in this modern day and time the one being rescued usually paid a monetary premium to some insurance company to provide him protection for this type of exposure.

Many of our citizens have been criticized for walking past persons that are committing a crime upon some other citizen, and in many cases permitting serious injuries, even death, to result. Certainly it is to be expected of a fellow traveler to stop and render assistance when he observes a tractor stopped across traffic lanes of an interstate highway, when he has just observed the tractor hit a guardrail, turn over, and then strike the guardrail twice again, and stop in such a fashion that the interstate highway is obstructed. In our case the rescuer further observed fuel on the roadway, the motor running on the tractor, and the driver not getting out of the vehicle, and certainly a responsible citizen under all of these circumstances should stop and render aid. Failure to do so may well result in the death of the driver of the vehicle because of his failure to receive medical attention and further it may result in further accidents by not doing all that is possible to remove such a vehicle from obstructing the highway in the manner in which occurred in this instance.

I, therefore, reject the doctrine of the *Saylor v. Parsons* case and accept the law of Virginia in those cases that are set forth in the annotation in 4 A.L.R.3d 558.

Many of the other complaints of the defendants in regard to this case are based upon instructions given upon the above premise as to the law and therefore once you accept the above as the law in Virginia, then the instructions which I gave in the case would be appropriate.

In this case the contributory negligence of the plaintiff submitted to the jury, the negligence of each defendant was submitted to the jury, and whether such

negligence was a proximate cause of this accident and resulting injuries to the plaintiff was submitted to the jury and I, therefore, believe all the parties in this case have received a fair trial under the law and the evidence in the case and there is ample evidence to support the verdict of the jury against all defendants.

Accordingly, I have prepared an order entering judgment in accordance with the jury verdict and I am enclosing herewith a copy of the order, which I have today entered.